# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| William Justin Steinberg, on behalf of himself and others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TQ Logistics, Inc., )<br>)<br>Defendant. )<br>_____) | C. A. No.: 0:10-cv-2507-JFA<br><br><br><br>**ORDER** |

Pending before the court is the motion by Plaintiff William Justin Steinberg ("Plaintiff") for conditional certification of a Fair Labor Standards Act ("FLSA") collective action, for time to conduct limited discovery related to identifying the putative class members, and for the issuance of a court-facilitated notice to all identifiable potential collective action members.[1]

## BACKGROUND

Beginning in May of 2008, Plaintiff was employed by Defendant TQ Logistics, Inc. at its Bowater Facility in Catawba, South Carolina, as a shuttle driver. In this position, he performed "spotting services,"[2] which included inspecting empty trailers for defects; moving empty trailers to a loading dock to be loaded; and moving loaded trailers to another location within the facility's yard so that it could be picked up by an over-the-

---

[1] This matter is related to *Buscarino v. TQ Logistics, Inc.*, No. 0:08-3882, 2010 U.S. Dist. LEXIS 82145 (D.S.C. August 11, 2010), which the parties settled on November 30, 2010.

[2] Plaintiff indicates that "spotting services" means, for the purposes of his motion, the moving of a trailer from one spot on private property to another spot on private property by means of a tractor or shuttle truck.

road driver for transit away from the yard. For this work, TQ Logistics paid Plaintiff on an hourly basis, with the possibility of a year-end safety bonus. In his suit, Plaintiff contends that he was required to perform his work duties in excess of 40 hours per week, but was never compensated for this overtime work in violation of the Fair Labor Standards Act.

## ANALYSIS

Section 216(b) of the Fair Labor Standards Act provides that

> An action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Pursuant to this provision, Plaintiff commenced this suit on behalf of himself and other employees of TQ Logistics, who also performed spotting services and who received similar compensation. Plaintiff seeks conditional certification of an FLSA collective action, to include two subclasses. The first subclass consists of all current and former TQ Logistics employees who performed spotting services for Defendant at the Bowater Facility, located in Catawba, South Carolina, for the time period beginning on September 24, 2007 through the present. The second subclass consists of all current and former TQ Logistics employees who performed spotting services for Defendant at the Duracell Facility, located in Lancaster, South Carolina, for the time period beginning on November 26, 2005 through the present.

Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA. *Purdham v. Fairfax County Pub. Schs*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). First, the court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are "similarly situated." *Brickey v. Dolgencorp, Inc.*, No. 06-CV-6084L, 2011 U.S. Dist. LEXIS 17769, at *8 (W.D.N.Y. February 23, 2011) (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). Because the court has minimal evidence, this determination is made using a fairly lenient standard, and courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan that violated the law. *See Purdham*, 629 F. Supp. 2d at 562–63. If the court finds that the proposed class members are similarly situated, the court conditionally certifies the class. Then the putative class members are given notice and the opportunity to opt in, and the action proceeds as a representative action throughout discovery. *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).

The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and only if the defendant files a motion for decertification. *Purdham*, 629 F. Supp. 2d at 563. Accordingly, throughout the second stage, courts apply a heightened fact specific standard to the "similarly situated" analysis. *Id.* Upon a determination that the plaintiffs establish the burden of proving they are similarly situated, the collective action proceeds to trial. *Id.* On the contrary, if the court determines

3

that the plaintiffs are in fact, not similarly situated, the class is decertified and the original plaintiffs proceed on their individual claims. *Id.*

In this matter, TQ Logistics does not object to Plaintiff pursuing his claim as a collective action; however, it does ask the court (1) to limit the proposed class to only those employees who worked for it from September 24, 2007 to the present; (2) to revise the propose facilitated notice; and (3) to reduce the time for the potential class members to file their consent to join this lawsuit from 120 days, as requested by Plaintiff, to 60 days. The court addresses these concerns in order.

I. **Class Definition**

As noted above, TQ Logistics does ask the court to limit the collective action to those employees who worked for it from September 24, 2007 to the present, rather than allow the proposed collective action to also consist of employees who worked at the Duracell Facility in Lancaster, South Carolina from November 26, 2005 to the present. In making this objection to Plaintiff's proposed class definition, TQ Logistics points out that either a two-year statute of limitation or a three-year statute of limitation applies to this action under the Fair Labor Standards Act,[3] and because Plaintiff filed this suit on September 24, 2010, the earliest an employee could have worked for it and still bring a claim in this suit is September 24, 2007. This, of course, assumes the court would apply a three-year statute of limitations based on a finding of a willful violation.

---

[3] As applicable to this suit, a cause of action under the Fair Labor Standards Act is barred unless it is brought within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a).

4

In response, Plaintiff explains that it asks the court to include not only the employees who performed spotting services for TQ Logistics at the Bowater Facility during the three years immediately preceding this suit, but also those drivers who performed spotting services at the Duracell Facility and who were employed by TQ Logistics for the three years immediately preceding the *Buscarino* lawsuit, because those employees were improperly excluded from the *Buscarino* suit due to TQ Logistics' concealment of facts that would have shown the Duracell Facility drivers were similarly situated to the named plaintiff in the *Buscarino* suit. To avoid a statute of limitations problem, Plaintiff asks the court to find that the statute of limitations is equitably tolled with respect to these employees based on TQ Logistics' misrepresentation of the membership of the *Buscarino* class. In making this argument, however, Plaintiff suggests that it would be premature to resolve this issue now as it is not presented before the court at the conditional certification stage.

TQ Logistics contends that the claims of these Duracell Facility employees are not entitled to equitable tolling. It explains that after the *Buscarino* suit settled, an internal audit was conducted to determine what other employees performed overtime work but were never compensated for that work. Five employees at the Duracell Facility were identified, and they received a check from TQ Logistics, based on TQ Logistics' calculation of what unpaid compensation these employees were due. According to TQ Logistics, two of these five employees received the class notice of the *Buscarino* suit, but must not have joined that class. TQ Logistics contends that the remaining three

employees were not exactly similar to the Bowater Facility employees in the *Buscarino* suit because these individuals traveled in interstate commerce during most of the weeks they worked, although during some weeks they did work solely at the Bowater Facility. TQ Logistics paid these employees overtime compensation for the time they did spend only at the Bowater Facility. Therefore, TQ Logistics contends that these Duracell Facility employees should not get the benefit of equitable tolling because they either had notice of the suit and did not opt-in to the class, or they had every opportunity to file their own suit.

In a Fair Labor Standards Act case, the Fourth Circuit has noted the following with respect to equitable tolling:

> Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. The circumstances under which equitable tolling has been permitted are therefore quite narrow. Equitable tolling has been allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have also recognized that equitable tolling is appropriate when extraordinary circumstances beyond plaintiffs control made it impossible to file the claims on time. Equitable tolling is not appropriate, however, where the claimant failed to exercise due diligence in preserving his legal rights.

*Chao v. Va. DOT*, 291 F.3d 276, 283 (4th Cir. 2002) (internal quotations and citations omitted). At this early stage of the litigation, the court thinks it best to conditionally certify the class to include both the subclass from the Bowater Facility and the subclass from the Duracell Facility, and after the class is more definitely shaped, it will entertain a

motion by TQ Logistics to decertify the subclass consisting of the Duracell Facility employees. It may be that none of those employees, however many there may be, chose to opt in the collective action, which would render this issue moot. Furthermore, the limited discovery may add to the factual background shaping Plaintiff's argument that TQ Logistics' alleged misrepresentations caused these employees to be left out of the *Buscarino* class, entitling them to equitable tolling. Accordingly, the court is convinced that the members of the proposed collective action are similarly situated, and it conditionally certifies the collective action to include all current and former TQ Logistics employees who performed spotting services at the Bowater Facility, located in Catawba, South Carolina, for the time period beginning on September 24, 2007 through the present, as well as all current and former TQ Logistics employees who performed spotting services at the Duracell Facility, located in Lancaster, South Carolina, for the time period beginning on November 26, 2005 through the present.

## II.     Proposed Collective Action Notice

Another dispute between the parties concerns the contents of the proposed class notice, and this dispute stems from TQ Logistics' decisions to unilaterally communicate with the potential class members of this case, a few days after this case was filed, and to pay them for any overtime work these employees may have performed but were never compensated for. Because TQ Logistics made these payments to the potential class members before the court could hold an expedited hearing, the court was unable to decide the issue of whether or not the payments should have been accompanied by a class notice

approved by the court. As a result, Plaintiff now contends that the information sent to the potential class members of this case was misleading because (1) it failed to inform the potential class members of the existence of this lawsuit and their right to participate; (2) it stated that the payment was a voluntary payment that resulted from an internal audit, when, in fact, it was a result of a claim made on their behalf; (3) it failed to advise the potential class members that the payment did not include an amount for liquidated damages, which they were entitled to in an equal amount, unless TQ Logistics prevailed on a good faith defense; (4) it failed to advise the potential class members that TQ Logistics calculated the payment assuming that it would prevail on every outstanding issue in their case; (5) it failed to advise the potential class members that TQ Logistics calculated the payment using the two-year statute of limitation, even though the time period for which they may receive unpaid overtime compensation and liquidated damages could be longer if the violations are found to be willful of if the statute of limitation was tolled; and (6) it failed to advise the potential class members of their right to recover interest and attorney's fees. Because TQ Logistics omitted all of this information from its letters to the potential class members, Plaintiff asks the court to approve the class notice offered with his motion, which he believes helps cure the alleged misrepresentations already received by the potential class members.

TQ Logistics contends that it did not do anything misleading by sending checks for unpaid overtime work to potential class members. And while it also does not oppose the mailing of a class notice now, it does argue that some of the portions of the Plaintiff's

8

proposed class notice are misleading. First, TQ Logistics disagrees with the proposed notice's statement, "In the previous action, however, the Court ruled that TQ Logistics' drivers who performed work at Bowater were not exempt from the overtime compensation requirements of the FLSA, and were entitled to receive overtime compensation." TQ Logistics notes that, in *Buscarino*, the court never determined whether or not the employees were entitled to overtime compensation. Instead, the court merely found that the employees' activities did not meet the definition of "driver" as set forth in the regulations, and it refrained from ruling on the application of the Motor Carrier Act exemption of the Fair Labor Standards Act. Therefore, TQ Logistics thinks this statement is misleading.

Second, TQ Logistics takes issue with the followings statements in the proposed notice:

> In October 2010, TQ Logistics sent certain employees checks along with a communication stating that the check was intended to pay the employees for all overtime compensation that they were owed. This communication was not authorized by the Court, and the amount of the checks were less than the amount of each employee's claim.

TQ Logistics finds these statements misleading for three reasons. First, it never represented in its letter to the potential class members that the voluntary payment was for *all* overtime worked; therefore, it argues that the inclusion of the modifier "all" is inaccurate. Second, it thinks the statement misleads the potential class members into assuming that the court needed to authorize the payments to its employees, which TQ Logistics argues is not supported by any case law. Lastly, it believes the statement in the

9

notice that the amounts of the checks "were less than the amount of each employee's claim" is subject to proof, which has not been shown in this case.

In reply, Plaintiff contends that these statements and its notice are not misleading and should be approved by the court. First, with respect to the court's decision in *Buscarino*, Plaintiff cites the court's conclusion from *Buscarino* that, "to the extent the spotters' activities take place on private roads secured by gates or otherwise, their activities cannot meet the matryoshka-doll-like definition of 'driver' as set forth in the relevant regulations." *See Buscarino v. TQ Logistics, Inc.*, No. 0:08-3882, 2010 U.S. Dist. LEXIS 82145, at *24 (D.S.C. August 11, 2010). Therefore, it appears to the court that Plaintiff implicitly agrees with TQ Logistics on this point, and in doing so, he proposes the notice state, "In *Buscarino*, the Court ruled that TQ Logistics' drivers were not exempt from the FLSA if their activities took place on private property that was secured by gates or other means." The parties did not address this argument at the hearing, and after considering the arguments, the court believes the second statement proposed by Plaintiff is appropriate to include in the notice.

Next, with respect to TQ Logistics' objection to the statement that its unilateral communication with its employees was not authorized by the court, Plaintiff contends that the communication was, in fact, not authorized. Therefore, while TQ Logistics may not need court permission to pay its employees the compensation they are owed, Plaintiff believes it did need the court's approval of the contents of the letter it sent to the potential class members because this suit had already been commenced and was subject to the

court's jurisdiction. Because the proposed notice only notes that the "communication" was not authorized by the court, Plaintiff asks the court to keep this statement in the proposed notice. Finally, with respect to the notice's statement that the voluntary payment made by TQ Logistics was less than the amount of each employee's claim, Plaintiff contends that the payments were in fact less than each employee could have obtained. To support this assertion, Plaintiff points out that the payments were calculated using a two-year statute of limitation period, when the claims could have been made based on a three-year period if TQ Logistics' conduct was willful. Moreover, the employees may have been entitled to an equal share of any liquidated damages, as well as mandatory attorney's fees and costs. Therefore, because TQ Logistics' letter to the potential class members did not contain all of this information, Plaintiff believes it gave the impression that the voluntary payment made the employee whole, when the payments were actually the minimum amount possibly owed under the Fair Labor Standards Act. Therefore, Plaintiff asks the court to keep this statement in the proposed notice as well.

After considering the parties' arguments, the court changes the paragraph in question to state the following:

> In October 2010, TQ Logistics sent certain employees checks along with a communication, *which may have been interpreted as a payment of* all overtime compensation they were owed. This communication was not *done at the direction of or approved by the* Court, and the amounts of the checks received by these employees *may be* less than the amount of each employee's actual claim.

The court believes this proposed change fairly takes into account each side's concerns, but more importantly, it accurately informs the potential class members who did receive a

check that they may or may not be able to obtain a larger reward than was paid to them by TQ Logistics. For the convenience of the parties, the court-approved notice is attached to this order as Exhibit 1.

### III.     Time Period for Potential Class Members to Opt-In

Finally, Plaintiff asks the court to give the potential class members 120 days to opt in the collective action, but TQ Logistics opposes this lengthy period of time. Because it does not believe the putative collective action is very large and because it is prepared to provide Plaintiff with the names and addresses of its employees who make up the putative class action, TQ Logistics asks the court to apply a 60-day opt in period in this case. At the hearing, Plaintiff's counsel expressed concern over having sufficient time for the U.S. Post Office to return any undeliverable mail; however, the court believes 60 days provides Plaintiff with sufficient time to notify all potential class members in this case. Moreover, this period of time is consistent with the court's rulings in *Buscarino*. Therefore, the putative members of the collective action will have 60 days to opt in this suit from the date the notices are mailed.

### CONCLUSION

As discussed above, the parties do not dispute that this suit should proceed as a collective action. Accordingly, the court conditionally certifies the class as defined in this order. It is further ordered that the parties conduct discovery limited to identifying and locating the members who fit the definition of this collective action, as well as any additional discovery necessary to resolve the equitable tolling issue addressed by the

parties in their briefs. This discovery period begins on the date of this order and will end no later than May 6, 2011. At the conclusion of this limited discovery period, whether on May 6 or sooner, if the parties are satisfied with the information obtained prior to that date, Plaintiff should mail the class notice that is attached to this order as Exhibit 1 to those members constituting the collective action. Those individuals will have sixty days from the mailing of the notice to opt in this suit.

This matter is continued past the May/June term of court, and the court will take up scheduling matters when the parties move to decertify or certify this collection action.

IT IS SO ORDERED.

April 7, 2011                                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                                      United States District Judge